UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JORDAN MICHAEL DRAKE, | Civil No.:     1:23-cv-00340-DCN |
| Petitioner, | Criminal No.: 1:19-cr-00402-DCN |
| v. | **MEMORANDUM DECISION AND ORDER** |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## I. INTRODUCTION

Before the Court is Petitioner Jordan Michael Drake's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (the "Petition"). Dkt. 18; CR-204, Dkt. 110.[1] The Government opposed Drake's Petition. Dkt. 23. Drake filed a Motion for Extension of Time to File a Response. Dkt. 24. The Court granted Drake's Motion. Dkt. 25. Drake filed his response past the Court's deadline. Dkt. 26.[2]

Having reviewed the record and briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, the Court will decide the Petition on the record and without oral argument. Dist. Idaho Loc. Civ. R.

---

[1] In this Order, "CR-402" is used when citing to the underlying criminal case record in Case No. 1:19-cr-00402-DCN-1; all other references are to the instance civil case.

[2] The Court gave Drake until February 6, 2026, to file his reply brief. Dkt. 25. While Drake's reply is dated February 6, 2026, the Court did not receive it until February 23, 2026. Dkt. 26.

7.1(d)(1)(B). For the reasons set forth below, the Court DENIES Drake's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255.

## II. BACKGROUND

### A. Factual Background

The background of the underlying criminal case is known to all parties, has been outlined in prior decisions, and is incorporated here by reference. Briefly though, Drake initially posed as his wife to entice a 15-year-old girl, "Kaylee," to engage in sexual contact. Dkt. 23, at 2. "Kaylee" was actually an undercover detective. *Id.* Throughout the conversations between Kaylee and Drake, Kaylee repeated her age over seven times. *Id.* Despite knowing Kaylee's age, Drake continued his attempt to persuade Kaylee to engage in sexual contact with him and eventually requested she send him a photograph. *Id.* at 3. The undercover detective sent Drake a photograph of an adult female law enforcement employee. *Id.* The photograph was digitally altered to make the female officer appear younger. *Id.*

After learning that Kaylee's parents were out of town, Drake drove to Kaylee's residence. *Id.* Upon arrival, Drake approached the backdoor where law enforcement took him into custody. *Id.* During subsequent interviews with law enforcement, Drake gave varying stories about his interactions with Kaylee. *Id.* For example, Drake alluded that his wife was the one who arranged the meeting with Kaylee but later admitted he was, in fact, the one who communicated with Kaylee by posing as both the alleged wife and himself. *Id.*

**B. Procedural Background**

On December 11, 2019, a federal grand jury returned an indictment against Drake alleging two Counts: Attempted Coercion and Enticement of a Minor in violation of 18 U.S.C. §2422(b), and Attempted Use of Interstate Facilities to Transmit Information about a Minor in violation of 18 U.S.C. § 2425. CR-402, Dkt. 17.

In April of 2021, a jury convicted Drake of both Counts in the indictment. CR-402, Dkt. 76. The Court subsequently sentenced Drake to 120 months imprisonment and entered Judgment. *Id.*, Dkt. 89. Drake appealed his conviction to the Ninth Circuit. *Id.*, Dkt. 92. On July 19, 2022, the Ninth Circuit affirmed the Court's Judgment in its entirety. *Id.*, Dkt. 108.

Drake filed his original Petition on July 25, 2023, Dkt. 1. Therein, Drake argued his trial counsel was deficient by failing to: (1) call Joshua Michel, a scheduled forensic expert witness, to testify at trial; (2) provide a complete entrapment defense; (3) object to "false, inflammatory, and prejudicial statements from Prosecution"; and (4) ask questions during voir dire regarding any potential prejudice related to serving on a jury during the COVID-19 pandemic. *Id.* at 4–8.

After granting both parties extensions to respond, Drake's original Petition became ripe on April 5, 2024. Dkt. 13. On December 31, 2024, Drake filed a Motion to Amend (Dkt. 15), and the Government filed its Response. Dkt. 16. Drake's Motion to Amend was subsequently granted by the Court. Dkt. 17.

On May 16, 2025, Drake filed his Amended Motion (Dkt. 18), thereafter, Drake waived his attorney-client privilege. Dkt. 20. The Government filed a Motion for Extension

of Time to File Response/Reply (Dkt. 21), which the Court granted (Dkt. 22), and the Government subsequently filed its Response on November 21, 2025. Dkt. 23.

On December 9, 2025, Drake filed a Motion for Extension of Time to File Response/Reply (Dkt. 24), which the Court granted giving Drake until February 6, 2026, to file his response. Dkt. 25. On February 23, 2026,–seventeen days past the deadline–the Court received Drake's reply. Dkt. 26.

The matter is ripe for review.

### III. LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, there are four grounds under which a federal court may grant relief to a prisoner who challenges the imposition or length of his incarceration: that (1) "the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "the court was without jurisdiction to impose such sentence;" (3) "the sentence was in excess of the maximum authorized by law;" or (4) "the sentence is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a).

Relief under § 2255 is afforded "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Further, "a district court must grant a hearing to determine the validity of a petition brought under that section '[u]nless the motions and the files and records of the case *conclusively show* that the prisoner is entitled to no relief.'" *United States v. Baylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting § 2255). In determining whether a § 2255 motion requires a hearing, "[t]he standard essentially is whether the movant has made specific factual allegations that,

if true, state a claim on which relief could be granted." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

A district court may dismiss a § 2255 motion based on a facial review of the record "only if the allegations in the motion, when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous.'" *Id.* at 1062–63 (quoting *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984)). In a § 2255 motion, conclusory statements are insufficient to require a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980); *see also James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

## IV. ANALYSIS

The Court is in a unique position, having presided over this case from its inception. It issued pre-trial rulings, presided over the jury trial, and handled all matters post-trial. It is familiar with the facts and Drake's arguments regarding his counsel's performance.

The Court turns to Drake's allegations.

### A. Ineffective Assistance of Counsel

Drake claims his counsel provided ineffective assistance in this case—specifically during trial. Drake highlights four instances he believes illustrate how his attorney, Jeffrey Brownson, was deficient in his representation. The Court will address each allegation in turn. None prevail.

As the United States Supreme Court has noted, "[a] court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was

MEMORANDUM DECISION AND ORDER - 5

within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).[3]

To successfully claim ineffective assistance of counsel, Drake must satisfy the two-part *Strickland* test. Drake must show that: (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000) (citing *Strickland*, 466 U.S. at 687).

To satisfy the first prong related to deficiency of counsel, "a defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 363; *see also Strickland*, 466 U.S. at 688. To do so, Petitioners must show "gross incompetence" on the part of their attorneys. *Kimmelman v. Morrison*, 477 U.S. 365, 366–67 (1986). There is a strong presumption that legal counsel's conduct falls within the range of sound trial strategy. *Strickland*, 466 U.S. at 669.

Second, a petitioner must show he was prejudiced by his counsel's errors and that "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman*, 477 U.S. at 375.

### 1. Defense Counsel's Decision to Call Off a Forensic Expert

Drake begins by alleging Brownson failed to call Joshua Michel, a forensic specialist, as a witness for the defense at trial. Dkt. 18-1, at 4. According to Drake, Michel was, among other things, "expected to provide clarifying information about Movant's

---

[3] In applying that presumption, a court must try "to eliminate the distorting effects of hindsight" and instead "to reconstruct the circumstances of counsel's challenged conduct" and "evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

internet activity, explain technical terms and processes, and counter Government expert Brad Thrall's testimony." *Id*. Drake asserts Brownson's failure to call Michel "was deficient performance and that his conviction is premised on that failure, thus his defense was prejudiced." *Id*.

According to Brownson's Declaration, the intent behind calling an expert witness was to show Drake's iPhone was used not only to search for "Kaylee" and "Kaylee Jo," but to access multiple Facebook profiles and download several photographs from those profiles. Dkt. 23-1, at 2. Brownson believed this evidence would corroborate Drake's anticipated testimony that, among other things, he searched the internet prior to traveling to Kaylee's home and believed he was meeting an adult female who was roleplaying that she was fifteen years old. *Id*.

On April 7, 2021, the government called HSI Special Agent Christopher Culter, where the evidence Brownson had been planning to elicit from Michel was admitted. *Id*. at 24. Special Agent Cutler testified that the images were found on Drake's phone and were downloaded prior to Drake traveling to Kaylee's home. *Id*. at 24–25. Because the Government's witness provided the information Brownson intended to obtain from Michel, Brownson did not feel the need to call Michel as a witness, who was traveling from Spokane, WA. *Id*. at 25. As such, Brownson discussed with Drake the decision to call off Michel as a witness, and to the best of Brownson's recollection, Drake agreed. *Id*.

Under the circumstances, the Court cannot find Brownson's strategic choice in this regard was substantially unreasonable. Brownson's decision to call off Michel was reasonable given the fact that the Government's witness produced the evidence Michel

MEMORANDUM DECISION AND ORDER - 7

intended to provide. What's more, there is no indication that Brownson's conduct—even if it could be considered deficient—caused Drake any prejudice or that the jury's verdict would have been any different *but for* the correction of this "error." For these reasons the Court finds the *Strickland* factors have not been met. This claim is dismissed.

### 2. Failure to Provide an Entrapment Defense

Drake next alleges Brownson was ineffective because he failed to provide a "complete entrapment defense by not addressing all the elements of the defense as defined in the jury instructions." Dkt. 18-1, at 10.

In Brownson's Declaration, he states he believed there were two potential defenses for Drake. First, that Drake "was not guilty because he believed the person he was communicating with and with whom he traveled to meet was an adult." Dkt. 23-1, at 25. Second, that Drake was entrapped. *Id*.

Of the two, Brownson made the strategic decision to focus more on the first defense because he felt this was Drake's "most robust defense" as there was corroborating evidence to support Drake's testimony. *Id*. As for the entrapment defense, Brownson was concerned that if he "gave an argument that even implicitly admitted or conceded" Drake committed the crime, it would have undermined Drake's "more robust defense." *Id*. at 26.

Nevertheless, Brownson presented an entrapment defense (CR-204, Dkt. 101, at 95; Dkt. 102, at 17), the Court instructed the jury on the defense of entrapment (*Id.*, Dkt. 73, at 42), and Brownson argued the Government induced/entrapped Drake in his closing arguments (*Id.*, Dkt. 103, at 39–41). Thus, it cannot be said Brownson failed to present this defense.

At most, Drake can say Brownson did not focus on this defense as strongly as he would have preferred. But such is insufficient to rise to challengeable conduct. As the Supreme Court has long recognized, "counsel has wide latitude in deciding how to best represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage." *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003).

In sum, Brownson's strategic decisions at trial were reasonable and do not rise to the level of ineffective assistance of Counsel. This claim lacks merit and fails the *Strickland* test. It is dismissed.

### 3. *Failure to Object to Witness Statements Elicited from the Government*

Next, Drake argues Brownson was ineffective because he failed to object to statements made by Government witnesses.[4] Drake alleges the Government elicited statements from expert witnesses about what Drake "knew" regarding the victim's age. Dkt. 18-1, at 15. Drake asserts the Government "induced an expert witness to state an opinion about what ultimately is the mental state necessary to constitute an element of the crime." *Id*. Drake alleges this violated Federal Rule of Evidence 704. *Id*.

To support his claim, Drake cites examples of statements made by Government witnesses Kristina Ferguson and Thomas Sallaway. For example, during trial, the prosecution asked Ferguson, "Based on your training and experience, do offenders have

---

[4] Having already pursued a direct appeal, Drake cannot raise evidentiary errors in his § 2255 Petition. To the extent he seeks to now raise such claims, they are procedurally defaulted. *See United States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal.").

MEMORANDUM DECISION AND ORDER - 9

knowledge that children are on these sites?" *Id*. Ferguson responded, "Yes, they do. I have interviewed countless suspects in these ICAC investigations where they fully acknowledge that they know that everybody on those sites are not, you know, 18 years old even if you're supposed to be 18 on those sites." Dkt. 23, at 15.

Under Rule 704, "An opinion is not objectionable just because it embraces the ultimate issue." Fed. R. Evid. 704(a). Additionally, "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Furthermore, "[a]n expert opinion 'is 'about' the ultimate issue of the defendant's mental state only if it includes a conclusion on that precise topic, not merely if it concerns or refers to that topic.'" *United States v. Olivas*, 150 F.4th 1107, 1115 (9th Cir. 2025) (quoting *Diaz v. United States*, 602 U.S. 526, (2024)).

Applying those rules here, the statements made by the Government's witnesses were not about Drake's mental state, nor were there any conclusions made as to Drake's guilt or innocence. Instead, the statements were about the facts surrounding the Government's sting operation and, more generally, whether people should know the age of other people frequenting certain websites. Dkt. 23, at 16. At no point did either of the Government's witnesses violate Rule 704.

Drake has not shown that Brownson's failure to object was detrimental to him. It goes without saying that an attorney could have (presumably) objected to statements made during trial. But as the old saying goes, "hindsight is always 20/20." To allege that

MEMORANDUM DECISION AND ORDER - 10

Brownson's trial strategy could have been better, or to opine on what might have been but for some alternative theory or potential objection, is pure speculation. Drake has not presented any concrete evidence illustrating that Brownson's strategic decisions not to object were unreasonable.

Drake has not presented any evidence to show Brownson's trial strategy was deficient or that Drake was prejudiced. This assertion fails the *Strickland* test and is dismissed.

### 4.  *Failure to Assess the Jury for Prejudice Due to Covid-19*

Finally, Drake alleges Brownson failed to assess the "jury for prejudice over serving their duty during the Covid-19 pandemic." Dkt. 18-1, at 19. Drake further argues Brownson *proposed* various voir dire questions about Covid-19—such as whether jurors would be biased because of having to be in Court during the pandemic—however, instead of asking those questions, Brownson focused on adultery instead. *Id*. at 20. In doing so, Drake argues Brownson did not keep with the "strategy he had only just secured the right to and which Movant expected him to employ." *Id*. at 21.

Brownson made the calculated decision not to ask Covid-19 related questions to the jurors during voir dire. In Brownson's Declaration, he states he understood from telephonic readiness conferences with the Court that each party would be limited to twenty minutes to conduct their voir dire. Dkt. 23-1, at 27. On March 29, 2021, Brownson filed Defendant's Requested Voir Dire Questions, requesting the Court "conduct extensive voir dire on the topic of Covid-19." *Id*. On April 5, 2021, Brownson "objected to the Court's proposed voir dire because it did not address Covid-19." *Id*. That said, during voir dire, Brownson made

MEMORANDUM DECISION AND ORDER - 11

the strategic decision not to ask about Covid-19 because of the time constraint. *Id*. Brownson instead chose to focus on "adultery, infidelity, and some of the graphic evidence that was likely to be introduced because I was concerned jurors would have strong feelings on these topics and prejudge Mr. Drake as a result." *Id*.

The Court had, at that time, Covid-19 protocols in place. It conducted many trials within that framework. That the Court did not feel it appropriate to ask jurors extensive questions about Covid-19 was a good indication that counsel did not need to inquire on that matter either. However, it would have been within Brownson's prerogative to do so. But he made a strategic choice to focus questions that dealt with the facts of the case that would have drawn out any true prejudices from prospective jurors. This was a sound strategic choice and Drake has not pointed to prejudice he suffered as a result of Brownson's failure to ask questions about Covid-19.

Drake cannot simply call into question Brownson's performance because he was ultimately convicted. He must allege specific failures that prejudiced him. He has not done so here. This claim is summarily dismissed.

5. *Conclusion*

Brownson's performance at trial was not deficient in any way. He provided Drake with adequate representation though all phases of this case. Drake has not persuasively called any of Brownson's strategic choices into question. Drake has not shown—pursuant to *Strickland*—that any of Brownson's actions, in combination or standing alone, amounted to ineffective assistance of counsel. His Petition is, therefore, dismissed.

MEMORANDUM DECISION AND ORDER - 12

## V. CERTIFICATE OF APPEALABILITY

A defendant cannot appeal a final order on a § 2255 motion unless the district court or court of appeals issue a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253(c)(1) (providing that appeal cannot proceed unless "circuit justice or judge issues a certificate of appealability"); *U.S. v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997) (interpreting "circuit justice or judge" to include district judges). The court should issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires the defendant to show that "a reasonable jurist would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

To promote efficiency, the district court is required to issue or deny a COA in the same order denying the defendant's § 2255 motion. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. If the district court denies the COA, the court should state the reason for its decision. *Aznar*, 116 F.3d at 1270. The defendant cannot appeal the denial of the COA but can file a notice of appeal and request a COA from the court of appeals pursuant to Federal Rule of Appellate Procedure 22. *See* Rule 11(a) of the Rules Governing § 2255 Proceedings. Upon so doing, the district court forwards to the court of appeals the defendant's case file, final order, and notice of appeal. *See Asrar*, 116 F.3d at 1270.

In this case, the Court denies the COA. As explained in the preceding sections, Drake's claims do not rise to the level warranting any reduction or vacatur of his trial or sentence. No reasonable jurist would disagree with this assessment. Therefore, should

MEMORANDUM DECISION AND ORDER - 13

Drake wish to appeal, he must timely file a notice of appeal with this Court and request a COA from the Ninth Circuit.

## VI. CONCLUSION

The Court finds nothing in the record to indicate any deficient performance or prejudice on Brownson's part. The bulk of Drake's Petition is made up of self-serving statements that are either directly contradicted by the record or simply based upon his opinion and supposition of what might have been. But without any facts in support, none of the allegations can sustain a finding of ineffective assistance of counsel.

For the reasons stated above, the Court finds no reason to vacate or remand Drake's conviction or sentence. Furthermore, the Court finds it unnecessary to conduct an evidentiary hearing on the same. Thus, the Petition is DENIED.

## VII. ORDER

**IT IS HEREBY ORDERED:**

1. Drake's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt. 18; CR-204, Dkt. 110) is **DENIED**. The Clerk of the Court is directed to file this Order in both cases.

2. The Court finds there is no need for an evidentiary hearing.

3. No certificate of appealability shall issue. Drake is advised that he still may request a certificate of appealability from the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b) and Ninth Circuit Rule 22-1. To do so, he must file a timely notice of appeal.

MEMORANDUM DECISION AND ORDER - 14

4. If Drake files a timely notice of appeal, and not until such time, the Clerk of the Court shall forward a copy of the notice of appeal, together with this Order, to the Ninth Circuit Court of Appeals.

DATED: April 2, 2026

David C. Nye
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 15